# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-1918

_____

| | | |
|---|---|---|
| Nebraska Beef, Ltd., | * | |
| | * | |
| Plaintiff/Appellee, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Dennis Greening; Donald Seitz; | * | District Court for the |
| Chander Dev; Duane Shonka; | * | District of Nebraska. |
| Michael Fast, | * | |
| | * | |
| Defendants/Appellants, | * | |
| | * | |
| John Doe, 1, Other FSIS Employees; | * | |
| Jane Doe, 1, Other FSIS Employees; | * | |
| John Doe, 2, Other FSIS Employees; | * | |
| Jane Doe, 2, Other FSIS Employees, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: December 16, 2004
Filed: February 28, 2005

_____

Before WOLLMAN, MAGILL, and COLLOTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Nebraska Beef, Ltd., brought a <u>Bivens</u>[1] suit against federal food safety inspectors (Inspectors) from the United States Department of Agriculture (USDA) based on actions taken by the Inspectors pursuant to the Federal Meat Inspection Act (FMIA), 21 U.S.C. § 601 *et. seq.* The Inspectors appeal from the district court's denial of their motion to dismiss on the basis of qualified immunity. Because a <u>Bivens</u> remedy is not available to Nebraska Beef, we reverse.

## I.

Pursuant to the FMIA, the USDA has promulgated a comprehensive regulatory scheme governing meat packing and processing. <u>See</u> 9 C.F.R. pt. 417. Nebraska Beef operates a packing and processing plant subject to inspection under the FMIA and its implementing regulations. On September 3, 2002, the Inspectors conducted a public health assessment of Nebraska Beef's plant and issued Noncompliance Records (NRs) for perceived regulatory violations. Following several procedural actions, Nebraska Beef and the USDA entered into a mutual consent decision to resolve the NRs. According to Nebraska Beef, the Inspectors maliciously issued fifty-eight additional NRs in contravention of the consent decision.

Nebraska Beef initiated a <u>Bivens</u> action against the Inspectors for damages to its reputation and business. The Inspectors filed a motion to dismiss on several grounds including qualified immunity and the nonavailability to Nebraska Beef of a <u>Bivens</u> remedy. It is from the denial of that motion that the Inspectors filed this interlocutory appeal.

---

[1]<u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). <u>Bivens</u> allows tort actions against federal officials and employees directly under the Constitution. <u>See</u> <u>Estate of Rosenberg by Rosenberg v. Crandell</u>, 56 F.3d 35, 36 (8th Cir. 1995).

## II.

Nebraska Beef asserts that we lack jurisdiction to consider the availability of a Bivens remedy. The Supreme Court first recognized jurisdiction over an interlocutory appeal from a denial of qualified immunity in Mitchell v. Forsyth, 472 U.S. 511 (1985). In Drake v. Scott, we held that this jurisdiction encompassed the related issue of whether a complaint failed to state a claim, holding that when an interlocutory appeal of a denial of qualified immunity is properly before us, we may decide "closely related issues of law." 812 F.2d 395, 399 (8th Cir. 1987), aff'd on reh'g, 823 F.2d 239 (8th Cir. 1987). The defendants in Drake had asserted qualified immunity but had also argued that Drake's due-process claim failed as a matter of law because Drake had no property interest. Id. at 398. We noted that "[i]f Drake possesses no property interest, he cannot succeed on his claim, and we need not reach the immunity issue." Id. at 399. We observed that the property-interest question was "analytically antecedent to, and in a sense also pendent to, the qualified-immunity issue." Id.

Subsequent to Drake, the Supreme Court considered a Bivens claim that alleged an infringement of Fifth Amendment due-process "liberty interests" in Siegert v. Gilley, 500 U.S. 226, 229 (1991). The Supreme Court instructed that:

> A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits. One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.

Id. at 232.

-3-

The Supreme Court revisited the jurisdictional limits of an interlocutory appeal from a denial of qualified immunity in <u>Johnson v. Jones</u>, 515 U.S. 304 (1995). The Court examined whether appellate courts had jurisdiction to consider pretrial "evidence insufficiency" claims in an interlocutory appeal from the denial of qualified immunity. <u>Id.</u> at 308. The Court stressed that the issue on appeal concerned "a *fact-related dispute*" as to whether the pretrial record contained evidence sufficient to show a genuine issue of fact for trial. <u>Id.</u> at 307 (original emphasis). The Court cautioned against expansive jurisdiction, observing that an interlocutory appeal "can threaten [district court] proceedings with delay, adding costs and diminishing coherence" and that such an appeal "risks additional, and unnecessary, appellate court work either when it presents appellate courts with less developed records or when it brings them appeals that, had the trial simply proceeded, would have turned out to be unnecessary." <u>Id.</u> at 309. The Court concluded that a question involving only evidence sufficiency, i.e., which facts a party may be able to prove at trial, is not appealable. <u>Id.</u> at 313.

The following year, in <u>Behrens v. Pelletier</u>, the Court restated its holding in <u>Johnson</u>, observing that: "summary judgment determinations *are* appealable when they resolve a dispute concerning an abstract issue of law relating to qualified immunity—typically, the issue whether the federal right allegedly infringed was 'clearly' established." 516 U.S. 299, 313 (1996) (internal citations and quotations omitted) (original emphasis).

The question before us, then, is whether, in light of <u>Siegert</u>, <u>Johnson</u>, and <u>Behrens</u>, the availability of a <u>Bivens</u> remedy is an issue of law that is "closely related" to or "inextricably intertwined" with the denial of qualified immunity.[2] Although the

---

[2]In <u>Kincade v. City of Blue Springs, Mo</u>, 64 F.3d 389, 394-95 (8th Cir. 1995), we equated our "closely related" definition to the "inextricably intertwined" language used in <u>Swint v. Chambers County Comm'n</u>, 514 U.S. 35 (1995). <u>Cf.</u> <u>Prescott v. Little Six, Inc.</u>, 387 F.3d 753, 756 n. 2 (8th Cir. 2004).

lack of a <u>Bivens</u> remedy would not entitle the plaintiffs to qualified immunity,[3] the issue is "analytically antecedent to, and in a sense also pendent to, the qualified immunity issue." <u>Drake</u>, 812 F.2d at 399. It is a purely legal question that presents none of the judicial economy concerns addressed in <u>Johnson</u>. In fact, common sense tells us that addressing this potentially dispositive legal question serves the interests of judicial economy. If we remanded to the district court and the plaintiffs prevailed at trial, we would likely see the same appeal again, after the cost and time of litigating a lawsuit which, if no <u>Bivens</u> remedy exists, is doomed from its inception. Accordingly, we conclude that we have jurisdiction to consider the availability of a <u>Bivens</u> remedy. <u>See</u> <u>Moreno v. Small Bus. Admin.</u>, 877 F.2d 715, 716 (8th Cir. 1989) (question of qualified immunity on interlocutory appeal is moot when <u>Bivens</u> action is precluded by comprehensive regulatory scheme); <u>see</u> <u>also</u> <u>Hill v. Dep't of the Air Force</u>, 884 F.2d 1318, 1320 (10th Cir. 1989) (deciding interlocutory appeal based on lack of <u>Bivens</u> remedy and not reaching issue of qualified immunity); <u>cf.</u> <u>Merritt v. Shuttle, Inc.</u>, 187 F.3d 263, 268-69 (2d Cir. 1999) (resolving predicate issue of subject matter jurisdiction is "necessary to ensure meaningful review of" denial of qualified immunity). <u>But</u> <u>see</u> <u>Triad Assocs., Inc. v. Robinson</u>, 10 F.3d 492, 496-97 n. 2 (7th Cir. 1993) (refusing to extend pendent jurisdiction to "collateral" legal issues of standing unrelated to qualified immunity and finding no "'compelling reasons' for not deferring the limitations questions until the end of the lawsuit"); <u>Kwai Fun Wong v. United States</u>, 373 F.3d 952, 961 (9th Cir. 2004) (stating that resolving the availability of a <u>Bivens</u> remedy "is not a logical predicate to the resolution of. . . the qualified immunity issue").

---

[3]We note that dictum in <u>Buchholz v. Aldaya</u> 210 F.3d 862 (8th Cir. 2000) suggests otherwise. We stated in <u>Buchholz</u>, citing <u>Drake</u>, that "[i]f defendants prevail on [establishing that Buchholz has no cause of action], 'it follows a fortiori' they are entitled to qualified immunity." <u>Id.</u> at 865. This assertion, which had no effect on the holding in <u>Buchholz</u>, does not inexorably flow from our holding in <u>Drake</u>. Concluding that a <u>Bivens</u> action is unavailable precludes the need to decide whether the defendants are entitled to qualified immunity; it does not entitle them to qualified immunity.

## III.

The Supreme Court has been wary of extending <u>Bivens</u> remedies into new contexts, <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 421 (1988), and has not created additional <u>Bivens</u> remedies "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration." <u>Id.</u> at 423. We have noted that this is the case even when the administrative remedy does not provide complete relief. <u>Sinclair v. Hawke</u>, 314 F.3d 934, 940 (8th Cir. 2003).

There is a "presumption against judicial recognition of direct actions for violations of the Constitution by federal officials or employees," and "[i]f Congress has not explicitly created such a right of action, and if it has created other remedies to vindicate (though less completely) the particular rights being asserted in a given case, the chances are that the courts will leave the parties to the remedies Congress has expressly created for them." <u>McIntosh v. Turner</u>, 861 F.2d 524, 526 (8th Cir. 1988). When Congress has created a comprehensive regulatory regime, the existence of a right to judicial review under the APA is sufficient to preclude a <u>Bivens</u> action. <u>Sinclair</u>, 314 F.3d at 940. Parties may not avoid administrative review simply by fashioning their attack on an agency decision as a constitutional tort claim against individual agency officers. <u>Id.</u>

Three factors counsel against extending a <u>Bivens</u> remedy to an action brought against the Inspectors. First, Congress has not explicitly created any direct right of action against USDA employees alleged to have committed constitutional violations. Second, the USDA has promulgated a comprehensive regulatory scheme pursuant to the FMIA that includes the right to judicial review under the APA.[4] Finally, Congress

---

[4]These procedures include provisions for an administrative appeal from an adverse decision by a USDA inspector. <u>See</u> 9 C.F.R. §§ 500.2(c) and 500.5 (2005). The Secretary of Agriculture has also promulgated "Uniform Rules of Practice"

has created a stringent exhaustion requirement for grievances filed against USDA employees, see 7 U.S.C. § 6912(e), which further evidences its intent to have grievances aired to and addressed by the agency prior to our review.

Given the above factors, as well as the Supreme Court's caution against extending Bivens remedies to new contexts, we conclude that such a remedy is not available to Nebraska Beef. Cf. Sinclair, 314 F.3d at 942-43 (observing that personal liability for bank regulators in the "complex regulatory environment" of the banking industry is for Congress to decide). Because we resolve the instant case on the lack of a Bivens remedy, we do not reach the issue of qualified immunity. We reverse the district court's denial of the Inspector's motion to dismiss and remand with an order to dismiss the complaint for failure to state a claim upon which relief can be granted.

_____

which establish procedures for making an appeal to the agency. See 7 C.F.R. § 1.130 *et. seq.* (2005). Under those regulations, an aggrieved party may file a complaint if there "is reason to believe that a person has violated or is violating any provision of [*inter alia*, the FMIA] or of any regulation, standard, instruction or order issued pursuant thereto." Id. at § 1.133(b)(1). A final order by the USDA's Judicial Officer is subject to judicial review. Id. at § 1.145(i).